**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

CHARLES SALIS,

      Plaintiff,

      v.                                  Case No.: 3:08-cv-564-RV/MD

OFFICER MARK PATRICK HAFNER,
in his official and individual capacities;
OFFICER LESTER R. WOLTHERS,
in his official and individual capacities,

      Defendants.
_____/

**<u>ORDER</u>**

On August 5, 2006, the plaintiff, Charles Salis, was arrested and taken into custody by the defendants, Okaloosa County Sheriff Deputies Mark Patrick Hafner and Lester R. Wolthers. He was charged with battery (domestic violence), battery on an officer, resisting an officer, and disorderly conduct. This section 1983 case arises out of alleged excessive force during his arrest. Part of the incident was captured on video from surveillance cameras where the arrest occurred, and the video (which has no sound) has been filed with the court and is part of the record.

The defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (doc. 38), and the plaintiff has filed a timely response. In his opposition, the plaintiff has relied on evidence that the defendants maintain is inadmissible. The defendants have thus filed a motion to strike that evidence (doc. 52). These motions will be considered in reverse order.

**I.    MOTION TO STRIKE**

In opposition to the defendants' motion for summary judgment, the plaintiff has filed evidence from his underlying criminal trial: (i) a pre-trial affidavit and trial testimony from Melissa Barron (the alleged domestic violence victim), and (ii) trial testimony from Geoffrey Peele and Paul Dwyer (two eyewitnesses to the incident). The primary thrust

of the defendants' argument in their motion to strike is that the affidavit and trial testimony are hearsay, which is an out-of-court statement presented for the purpose of establishing the truth of the content of the statement which does not fall within an exception to the hearsay rule. The plaintiff concedes that the trial evidence is hearsay and that, in its present form, it "would not be admissible in the Plaintiff's case in chief." However, he maintains that the evidence would be admissible at trial for impeachment purposes, and he contends that there is no limitation on "this type of [impeachment] evidence from being used to rule on a pretrial motion."

The plaintiff is wrong on the latter point. "[I]f a hearsay statement is offered for its truth and would not be admissible at trial under an exception to the hearsay rule, it may not be considered on summary judgment. This is true even though the hearsay statement might be admissible at trial for impeachment, because to be considered on summary judgment, the statement must be admissible as substantive evidence." *O'Bryant v. Langford,* 2008 WL 906741, at *8 (N.D. Fla. Apr. 3, 2008) (citing *Macuba v. Deboer,* 193 F.3d 1316 (11th Cir. 1999)).

That is not to say, however, that this evidence may not be used in response to the defendants' motion for summary judgment. To the contrary, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Macuba, supra,* 193 F.3d at 1323 (collecting cases). In fact, that is the usual circumstance involving affidavits and depositions submitted with respect to summary judgment materials. Here, the trial testimony from the three witnesses, and the 2006 pre-trial affidavit from the alleged battery victim, could obviously be reduced to admissible form at trial and used as substantive evidence.

Thus, the defendants' motion to strike (doc. 52) is DENIED. I will, or may, consider the challenged evidence in deciding the motion for summary judgment.[1]

---

[1] The defendants also move to strike the expert affidavit filed by Dr. George Kirkham --- a criminology professor with expertise in law enforcement --- in which he concludes, *inter alia*, that the defendants used excessive force during plaintiff's arrest. I

*Case No.: 3:08-cv-564-RV/MD*

## II.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Summary judgment is inappropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact will be "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See id.*

On summary judgment, the record evidence and all reasonable inferences drawn therefrom must ordinarily be viewed in a light most favorable to the non-moving party. *National Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003). However, the existence of a video depicting the incident at issue can alter this standard. A video that contains clear and relevant information about an incident can be used and relied upon by the district court, even when the events on video contradict the facts as stated by the non-moving party. *See Scott v. Harris,* 550 U.S. 372, 380-81, 127

---

need not (and will not) consider Dr. Kirkham's affidavit in deciding the pending motion for summary judgment, so the motion to strike on that basis is denied as moot. To the extent defendants believe that Dr. Kirkham's opinions will confuse and invade the province of the jury, I will reconsider that argument through a timely and properly-filed motion in limine.

*Case No.: 3:08-cv-564-RV/MD*

S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted by the videotape"); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009) (when an incident is captured on videotape and submitted as evidence to the district court, the video should be reviewed de novo).

**B.     Background**

The event at issue occurred at a McDonald's restaurant located in Shalimar, Florida, and it has two essential phases. The first occurred inside the restaurant and, as already noted, was captured on the restaurant's surveillance camera. The second occurred in the parking lot outside, where there were was no surveillance video. Unless otherwise noted, these facts are: (a) undisputed; (b) apparent from the videotape; or, if disputed and not apparent from the videotape, (c) resolved in favor of the plaintiff where supported by evidence in the record.

The plaintiff, Charles Salis, was area manager at the Shalimar McDonald's. Melissa Barron, his then-girlfriend and mother of his child, worked at the same restaurant. On August 5, 2006, the plaintiff and Barron had an argument at work, during which Barron told him that she was planning to leave him and the job. The plaintiff removed the battery from her cell phone and placed it in his pants pocket. He maintains that he hoped that by taking her cell phone battery, she would not be able to call someone to pick her up (because they had taken the same car to work that morning), and she would then be forced to stay and talk about it. At some point, however, Barron used a store phone to call the police via 911. She testified during the plaintiff's criminal trial that she had called the police because "I wanted to leave so I felt if I got an authority figure involved then maybe he would give me my items back." For reasons that are not entirely clear, she hung up the phone and the call was not completed. The police called back and asked if anyone had called 911 and needed assistance. The plaintiff answered the phone and told the operator that it was a mistake, that no one had called, and that no assistance was needed; officers were dispatched to the restaurant

anyway.[2]

After the plaintiff got off the phone with the 911 operator (but before the defendants arrived), Barron tried to get her cell phone battery back. These events were captured on store surveillance cameras, and the video shows Barron making several unsuccessful attempts to reach into the plaintiff's pocket. On one attempt, she "pricked herself" on a ballpoint pen that he had in his pocket, and this resulted in a small puncture wound to the inside of her wrist.

Shortly thereafter, the officers arrived on the scene in response to the 911 call. Barron approached Deputy Wolthers and began talking to him, and Deputy Hafner joined a few seconds later. As the officers spoke with her in the customer area in the front of the restaurant (for approximately one minute), Barron is seen holding her wrist --- which was bleeding at the time. The deputies asked what happened, and the video shows that she made several stabbing gestures toward her wrist. According to Deputy Wolthers, which Barron confirmed during her trial testimony, "she specifically said that she was stabbed in the wrist with a pen [by the plaintiff]."[3]

As Barron was talking with the officers, the plaintiff came from the back of the restaurant and approached them quickly. He was clearly upset, and, according to Barron, he "started to interrupt" as she was telling the deputies what happened. The plaintiff pointed his finger at Barron, and she immediately took a step back. Deputy Wolthers testified that plaintiff was "speaking very loudly." A McDonald's employee and one of the eyewitnesses, Paul Dwyer, described the plaintiff as being "agitated" and "angry." Another eyewitness, Wayne Lopez, said the plaintiff came out from behind the

---

[2] The plaintiff testified at deposition that he told the operator that no one had called the police because, at that point in time, he was unaware that Barron had placed the call from another telephone. However, Barron's trial testimony indicates that she was "standing right there" when the plaintiff told the operator that it was a mistake, and she then told the plaintiff that it was not a mistake.

[3] Barron denies that she told Wolthers that plaintiff had stabbed her when she first walked up to the officers. Nevertheless, she acknowledges that as their conversation progressed, she did tell him: "[I] got stabbed by [my] boyfriend."

*Case No.: 3:08-cv-564-RV/MD*

counter "screaming at the top of his lungs." It was an obviously heated domestic altercation. Wolthers stepped between Barron and the plaintiff. Wolthers then placed his hand on plaintiff's arm and gestured for him to go outside --- after which Deputy Hafner made the same gesture --- so the officers could establish what happened. Wolthers testified that this "soft touch" is used to separate and detain the parties in a domestic situation until their involvement and role in the altercation can be determined. The plaintiff asked if he was under arrest, and when he was told "no," he told the officers that he knew his rights and that he did not have to go outside.

After refusing to go outside, the plaintiff pulled away from Deputy Wolthers, told him "do not touch me," and started walking back toward the kitchen.[4] Deputy Hafner then stepped forward and brought the plaintiff back to the customer area. As he was doing so, Hafner placed both the plaintiff's hands behind his back, but he was not handcuffed at the time. The plaintiff claims that he was fully compliant and that he was not resisting while he was being led by Deputy Hafner. Hafner has testified, however, that he was resisting and the floor was slippery, which caused him to become concerned that he might lose control of plaintiff.[5] Hafner utilized a "leg sweep" maneuver in order to bring the plaintiff down to the floor so that he could be handcuffed. The video then shows the plaintiff on the floor with both officers atop him while he is being handcuffed. The plaintiff maintains that "at that time I began to scream because I was in pain." The defendants finished handcuffing him on the floor and brought him to his feet. It was approximately 35 seconds from the time plaintiff first approached the deputies to

---

[4] The plaintiff claims that he walked toward the kitchen only because the officers "told me to step back. I was told to step back, so I stepped back." Although there is no sound, the video clearly shows both officers gesturing and directing him outside. The plaintiff's claim on this point is plainly contradicted by the video, so I will not accept his version of this event. *See Scott v. Harris,* 550 U.S. 372, 380-81, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

[5] The defendants contend in their summary judgment motion that the plaintiff was resisting and that on the video "Deputy Hafner can be seen being pulled along and bracing his feet" and "it can be clearly seen that Salis pulls a deputy almost like an ox pulls a cart and is attempting to control movement."

the time he was handcuffed. He was removed from the restaurant, and he cursed at the officers on the way out. Specifically, he admits using "vulgar words" in an elevated and "higher than normal" voice, including calling Deputy Hafner a pig, racist, and, most likely, a "m..... f....."

The events that occurred outside the McDonald's building are not on video, although a witness (Geoffrey Peele) did take photographs from his cell phone. The photos show Deputy Hafner leading plaintiff through the parking lot while holding his handcuffed arms at about a 90 degree angle and then holding him against the trunk of the patrol car. The plaintiff contends that he told the defendants during this time that he felt a "pop" in his neck, that he was in serious pain, and that he needed an ambulance. He alleges that Hafner then used the racial slur "boy" and slammed him onto the trunk of his patrol car "several times," even though he was in pain and was not resisting. This claim is partially corroborated by Peele, who testified at the criminal trial that the plaintiff was not resisting or fighting with the officers "in any way," yet Hafner "slammed him on the trunk" as the plaintiff was "yelling in pain." The plaintiff was eventually taken to the hospital and diagnosed with a fracture in his neck, for which he later underwent a neck fusion.

The plaintiff was charged with (i) battery (domestic violence), (ii) battery on an officer, (iii) resisting an officer, and (iv) disorderly conduct. The battery charges were dismissed. He went to trial on the latter two charges, and he was acquitted. This section 1983 case followed.

In his seven-count complaint, the plaintiff claims that the defendants violated his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment when the defendants used excessive force on him (count I) and arrested him without probable cause (count II); and that his due process rights were violated when defendants provided (and conspired to provide) false reports and testimony about what occurred leading up to and during his arrest (counts III and IV). The plaintiff also brings three parallel claims under state law for battery (count V), false imprisonment (count VI), and malicious prosecution (count VII).

*Case No.: 3:08-cv-564-RV/MD*

**C.    Discussion**

The defendants move for summary judgment with respect to the federal claims on grounds of privilege, qualified immunity, and quasi-judicial immunity; and they ask that the state law claims be dismissed on the same grounds or by having the court decline jurisdiction over those claims if the federal claims are dismissed.

**(1) Unlawful Arrest/False Imprisonment/Malicious Prosecution (Counts II, VI, VII)**

The defendants first contend that they are entitled to summary judgment on the unlawful arrest/false imprisonment claims on the ground that they had privilege "to accomplish the lawful objective" of arresting the plaintiff. To be immune from these claims, defendants do not have to establish that there was probable cause for the arrest. Rather, they need only show that there was at least *arguable* probable cause, which means "under all the facts and circumstances, an officer reasonably could --- not necessarily would --- have believed that probable cause was present." *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004). Whether the plaintiff was not prosecuted on some of the charges (and acquitted on the others) has no bearing on whether the defendants had arguable probable cause in the first place, nor does it matter if the defendants had exactly the right charge so long as they had arguable probable cause to arrest for any offense. *See, e.g., Knight v. Jacobson,* 300 F.3d 1272, 1275 (11th Cir. 2002). As noted, the plaintiff was arrested and charged with, *inter alia*, battery (domestic violence) in violation of Florida Statute § 784.03, and disorderly conduct in violation of Florida Statute § 877.03.

Section 784.03 provides: "The offense of battery occurs when a person: (1) Actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person." It is undisputed that Barron called 911 for assistance. It is further undisputed that while the defendants were interviewing Barron, she was holding her bleeding wrist as she told them (and demonstrated) that the plaintiff had stabbed her with a pen. Within seconds of telling the defendants that she had been stabbed, the plaintiff quickly approached the officers in an

angry and agitated manner and "screaming at the top of his lungs." He then refused to go outside while the officers finished interviewing Barron and conducting their investigation. Based on the foregoing undisputed facts, the defendants had not only arguable probable cause, but probable cause in fact, to believe that a violation of section 784.03 had occurred.[6]

In addition, or in the alternative, the defendants had probable cause to arrest the plaintiff for disorderly conduct under Florida Statute § 877.03, which provides: "Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree." Although "mere words" and epithets are insufficient to establish probable cause for a violation of this section, "conduct which constitutes more than 'mere words' or epithets is actionable." *Epstein v. Toys-R-Us Delaware, Inc.,* 277 F. Supp. 2d 1266, 1272 (S.D. Fla. 2003). Such actionable conduct can include "becoming loud and abusive, interrupting the officer's investigation, . . . and ignoring the officer's requests." *See id.*; *see also Wiltzer v. State,* 756 So.2d 1063 (Fla. 4th DCA 2000) (probable cause existed for disorderly conduct in part because the defendant defied lawful orders to leave the premises). Because the undisputed evidence shows that plaintiff was loud and abusive, he interrupted the defendants' investigation and interview of Barron, and he ignored their lawful and legitimate requests to separate from the situation and step outside while their investigation was ongoing, there was probable cause for the disorderly conduct arrest. Consequently, summary judgment is appropriate on the unlawful arrest and false imprisonment claims. *See Case v. Eslinger,* 555 F.3d 1317,

---

[6] To the extent the plaintiff appears to suggest that the arrest was improper because the injury to Barron's wrist was "extremely minor" and "de minimis," that argument is unavailing. *See, e.g., State v. Hearns,* 961 So.2d 211, 218-19 (Fla. 2007) ("Existing case law makes it clear that any intentional touching, no matter how slight, is sufficient to constitute a simple battery;" thus, even "only nominal contact" will suffice under section 784.03) (citing cases).

*Case No.: 3:08-cv-564-RV/MD*

1326-27 (11th Cir. 2009) ("[t]he existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest.") (citation and quotation marks omitted).

For the same reason, defendants seek summary judgment on the state law malicious prosecution claim. The elements of this claim are: (i) the instigation of a criminal proceeding by the defendants; (ii) its termination in favor of the plaintiff; (iii) malice; (iv) lack of probable cause; and (v) damage. *See Maybin v. Thompson,* 606 So.2d 1240, 1241 (Fla. 2d DCA 1992). "[T]hese elements must concur and the failure to establish any one of them by a preponderance of the evidence would be good ground for the granting of a motion for a verdict favoring the defendant." *Ward v. Allen,* 11 So.2d 193, 194 (Fla. 1943). As just noted, there was probable cause in fact for the arrest and prosecution on the disorderly conduct charge, even though the plaintiff was ultimately acquitted of that offense. It follows that there is no genuine disputed issue of material fact and summary judgment is appropriate with respect to the malicious prosecution claim. *See Osborne v. American Multi Cinema, Inc.,* 2009 WL 3208744, at *2 (11th Cir. Oct. 8, 2009) ("The existence of probable cause creates an absolute bar to Osborne's complaints . . . and defeats his claims for malicious prosecution.") (citations omitted).

### (2) Excessive Force/Battery (Counts I and V)

The defendants next argue that they are entitled to qualified immunity on the excessive force and battery claims. The doctrine of qualified immunity is essentially a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given all the circumstances and information possessed by the official at the time of the conduct. *See generally Hope v. Pelzer,* 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). Qualified immunity seeks to ensure that officials can reasonably anticipate when their conduct may give rise to liability, and thus liability only attaches if the contours of the right allegedly violated are sufficiently clear

that a reasonable person would understand that what he is doing violates that right. *See, e.g., McElligott, supra,* 182 F.3d at 1260. The question in this case is whether it was "clearly established" in August 2006 that a reasonable officer could not do what the plaintiff *alleges* the defendants did to him.

The defendants cite to and collect numerous cases purporting to establish that "the single deployment of a leg sweep coupled with restraint and escort control techniques without any extracurricular blows, strikes, kicks or other use of other implements . . . is relatively low on the continuum of force options available to police officers facing perceived active efforts to frustrate a lawful arrest," and, consequently, it was not clearly established that such force would be excessive. However, in advancing this argument, the defendants focus almost exclusively on what was captured on the video surveillance inside the McDonald's. Based on my own viewing of the video, I agree that, in light of the tense and rapidly-unfolding situation in the restaurant, the "leg sweep" and restraint techniques used by the defendants to restrain and handcuff the plaintiff were appropriate and justified, and not excessive.

But, the plaintiff is not only challenging what occurred in the restaurant. He is also challenging what took place outside in the parking lot, where the plaintiff alleges (and at least one witness partially corroborates) that Hafner "slammed" the plaintiff onto the trunk of the car "several times" even though he was not resisting or fighting with the officer in any way. Most notably, he was already handcuffed at that time. The Eleventh Circuit addressed this issue in a similar factual situation in *Galvez v. Bruce,* 552 F.3d 1238 (11th Cir. 2008). The plaintiff in that case refused to comply with the police officer's directives, and he resisted being handcuffed. Once he was handcuffed, however, he cooperated fully and "offered no physical resistance at all." Nevertheless, the defendant officer repeatedly "slammed" his body into a concrete wall, causing him pain and inflicting personal injuries. The Court of Appeals held that "crediting Galvez's story, as we must on summary judgment, we find that the force of repeatedly slamming Galvez into a corner of a concrete structure after he was handcuffed and compliant was disproportionate to the need for that force." *Id.* at 1243-44; *accord Lee v. Ferraro,* 284

F.3d 1188, 1198 (11th Cir. 2002) ("[W]e can discern no reason, let alone any legitimate law enforcement need, for Officer Ferraro to have led Lee to the back of her car and slammed her head against the trunk *after* she was arrested and secured in handcuffs. At this point, Lee clearly posed no threat at all to the officer or to anyone else and no risk of flight.") (emphasis in original). Accordingly, there is a genuine issue of material fact with respect to the plaintiff's excessive force and battery claims, and defendants' motion for summary judgment on those claims must be denied, on both the merits and under qualified immunity.

### (3) Due Process False Testimony and Conspiracy (Counts III and IV)

And lastly, the defendants claim they are entitled to immunity for allegedly providing (and conspiring to provide) false testimony. Relying on *Briscoe v. LaHue,* 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983) and *Jones v. Cannon,* 174 F.3d 1271 (11th Cir. 1999), the defendants contend that they enjoy absolute immunity for any allegedly false testimony that they gave as witnesses at trial or during their pre-trial depositions. That is true, as far as it goes. *See Jones, supra,* 174 F.3d at 1286 ("Detectives Powers and Bishop are absolutely immune from a § 1983 civil damages action for their [allegedly false] testimony as witnesses during Jones's criminal trial and during pre-trial depositions.") (citing *Briscoe, supra,* 460 U.S. at 325). However, counts III and IV are not based exclusively on defendants' trial and deposition testimony. Rather, the plaintiff also claims that his due process rights were violated when the defendants filed an allegedly false offense report and probable cause affidavit in support of his arrest. For example, Deputy Hafner stated in his probable cause affidavit that the plaintiff "used an unknown object, possibly keys, and cut my left forearm." And Deputy Wolthers stated in his offense report that after plaintiff was put in the patrol car, he "banged his head extremely hard approximately eight times on the rear plexiglass divider of the security cage." The plaintiff contends, and viewing all the evidence in a light most favorable to him a reasonable jury could find, that these claims were false

and designed to justify the arrest and "cover up" the true cause of his neck injury.[7] This conduct, if true, would not be protected by absolute immunity. *See id.* at 1282 (noting that "police officers do not have absolute immunity for submitting supporting affidavits in their applications for arrest warrants").

## III. CONCLUSION

For the reasons stated above, the defendants' motion to strike (doc. 52) is DENIED. The defendants' motion for summary judgment (doc. 38) is GRANTED in part and DENIED in part. Specifically, summary judgment is GRANTED as to counts II, VI, and VII, and DENIED as to counts I, III, IV, and V. The Clerk is directed to enter judgment accordingly, and the case will continue as to counts I, III, IV and V.

DONE and ORDERED this 17th day of December, 2009.

/s/ *Roger Vinson*
ROGER VINSON
Senior United States District Judge

---

[7] Eyewitness Peele testified at trial that plaintiff did not bang his head in the patrol car. Rather, he said the plaintiff "was just sitting there."

*Case No.: 3:08-cv-564-RV/MD*